IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:15-324-JFA |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| RECO VALARIE CAUTHEN ) | |
| _____ ) | |

This matter is before the court upon the defendant's *pro se* motion for compassionate release (ECF No. 72) pursuant to the First Step Act and 18 U.S.C. § 3582(c)(l)(A). The defendant contends that his current medical conditions place him at a higher risk of becoming seriously ill from the COVID-19 virus. The government has responded and the defendant has replied thereto.

## I. STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(l)(B); see *Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

1

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(l)(A), provides:

> ( c) Modification of an imposed term of imprisonment-The court may not modify a term of imprisonment once it has been imposed except that-
>
> ( 1) in any case-
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ( and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-
>>
>> (i)    extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission .....

18 U.S.C. § 3582(c)(l)(A).

By its terms, § 3582(c)(l)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S. C. § 3553 (a) if the court finds

that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(l)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

Before the passage of the First Step Act, the United States Sentencing Commission permitted a sentence to be modified due to the defendant's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications.  See U.S.S.G. § lB 1.13, n. 1 (A)–(C).  The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reasons" other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id*. at n. 1 (D).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is as of now no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582( c )(1 )(A)," and as a result, district courts are "empowered ... to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); see also *Kibble*, 992 F .3d at 331.

Nevertheless, § 1 B 1.13 provides a framework when evaluating a defendant's motion, but a court independently determines whether "extraordinary and compelling reasons"

warrant a sentence reduction under § 3582(c)(l)(A).

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have fully exhausted all of the administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf or the lapse of 30 days with no answer from the Warden after a request by the defendant, whichever is earlier. 18 U.S.C. § 3582(c)(l)(A).

The defendant attests that he submitted a request for compassionate release to the Warden on August 5, 2020 and that the Warden denied such request on August 24, 2020. It appears that the defendant has exhausted his administrative remedies and the court will proceed to review the matter on the merits. Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(l)(A) (providing the court may reduce the term of imprisonment) (emphasis added).

## II. DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence

reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. Under these circumstances, a chronic condition for which the defendant is not expected to recover reasonably may be found to be serious and substantially diminish the ability of the defendant to provide self-care within the correctional institution, even if that condition would not have constituted an extraordinary and compelling reason absent the risk of COVID-19. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

*The Defendant's Motion for Compassionate Release*

The defendant is now 47 years old and is serving a 120-month sentence for being a felon in possession of a firearm. He is currently incarcerated at the Federal Correctional Institution Coleman Medium in Florida. His projected date of release is June 2024.

The defendant states that he suffers from Type 1 diabetes, congestive heart failure, coronary artery disease, high blood pressure, high cholesterol, sleep apnea, Bells palsy, asthma, and angina. He contends that he is at high risk for being infected from COVID-19 due to his chronic illnesses.

In his reply (ECF No. 79) to the government's opposition memorandum, the defendant argues that he is a chronic care level 3 patient. He notes that he had a heart attack in 2018 while in transit to another BOP institution. Attached to his reply are numerous copies of his medical records which this court has carefully reviewed.

The government has responded in opposition to the defendant's motion. The government acknowledges that the defendant is Type 1 diabetic, has high blood pressure, high cholesterol, asthma, and an unspecified heart disease. The government states that there are no records to indicate that the defendant suffers from coronary artery disease, sleep apnea, Bell's palsy or angina. In his reply, the defendant disagrees with the government's assessment of his medical conditions.

The government submits that the defendant's medical conditions are appropriately managed at the BOP with medications and that his medical conditions do not present any impediment to his ability to provide self-care in the institution. The government notes, however, that the defendant's medical records indicate that he has been non-compliant with taking his medication and buying and eating foots that cause an increase in his blood sugar. And, on several occasions, the defendant has not eaten meals which has the effect of causing his blood sugar to drop drastically.

In its opposition memorandum, the government sets forth a comprehensive discussion of the strenuous measures the BOP is taking to mitigate the risks of COVID-19. In late December 2020, BOP facilities began receiving initial allotments of COVID-19 vaccines. According to the BOP, as of June 7, 2021, it has distributed more than 190,470 vaccines and

administered more than 188,661,000 of them.[1] The defendant has not advised the court whether or not he has received the vaccine.

The government also contends that the defendant's § 3553(a) factors strongly disfavor a sentence reduction as a result of his prior criminal history and the involvement of a firearm in the drug trafficking activity. The government notes that the defendant has received disciplinary infractions for disruptive conduct in 2020; possessing drugs/alcohol in 2018; and refusing to obey an order in 2017 while imprisoned at the BOP. The government suggests that the defendant would pose a danger to public safety if released and states that the BOP has given the defendant a high risk recidivism score based upon his criminal history and disciplinary actions while at the BOP.

The government also submits that the defendant has failed to establish his condition substantially diminishes his ability to provide self-care against serious injury or death as a result of COVID-19. Thus, the government argues that the defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(l)(A).

The court determines that the defendant has failed to show that his medical conditions substantially diminish his ability to provide self care against serious injury or death as a result of COVID-19.

---

[1] Information regarding the BOP's administration of the COVID-19 vaccine is available at https://bop.gov/coronavirus/. As of the date of this order, there are no confirmed inmate active cases of COVID-19 at FCI Coleman Medium. *Id.*

## III. PROCEDURAL HISTORY

The defendant was charged in an indictment for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(l) and 924(a)(2). On April 28, 2016, the defendant pleaded guilty to Count 1 pursuant to a written plea agreement (ECF No. 39).

The U.S. Probation Office prepared a Presentence Report (PSR) (ECF No. 53). The defendant's total offense level was 29 and his criminal history category was VI. Absent the maximum penalty authorized by statute, the Guidelines range would have been 151 to 188 months. This court sentenced the defendant to a term of 120 months incarceration followed by 3 years of supervised release.

The defendant thereafter filed an unsuccessful appeal of his sentence with the Fourth Circuit Court of Appeals.

With regard to post-sentencing conduct, the defendant has not submitted information concerning any classes he has taken or any other mitigating evidence in his favor. The government did note several disciplinary violations referenced earlier in this order.

To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that

emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

### III. CONCLUSION

After carefully considering the applicable law, the arguments of the parties, and the record before it, the court has conducted an individualized analysis and concludes that the defendant has not met his burden of establishing that he has an extraordinary and compelling reason such that he is eligible for release under § 3582(c)(l)(A). As the court finds no extraordinary and compelling reason, it is not necessary for the court to address the § 3553(a) factors.

Accordingly, the defendant's motion (ECF No. 72) is respectfully denied.

IT IS SO ORDERED.

September 20, 2021
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

9